[Cite as *In re A.J.*, 2022-Ohio-2669.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.J.         :
              :
              :    No. 110874
A Minor Child        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 4, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-21-100560

---

### *Appearances:*

Sylvester Summers, Jr., Co., LPA, and Sylvester Summers,
Jr., *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Robert Higgins, Assistant Prosecuting
Attorney, *for appellee*.

LISA B. FORBES, J.:

{¶ 1} A.J. appeals the juvenile court's classification of him as a juvenile offender registrant and a Tier II sex offender/child-victim offender. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.    Procedural History

{¶ 2}    On January 21, 2021, a delinquency complaint was issued in juvenile court against A.J. alleging that he violated certain criminal statutes based on sexual contact with his four-year-old niece, Z.  The case was tried to the court from June 4, 2021, through June 8, 2021.  The court adjudicated A.J. delinquent of one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4).

{¶ 3}    The court held a dispositional hearing on September 8, 2021, and committed A.J. to the Ohio Department of Youth Services ("ODYS") for a minimum of six months and a maximum period not to exceed his 21st birthday.  The court then suspended this commitment and placed A.J. "on community control with probation supervision for a period of two (2) years."  The court ordered that A.J. be "committed to the care and supervision of the Juvenile Court for placement."

{¶ 4}    The court held a juvenile-offender registration and sex-offender classification hearing (the "classification hearing"), which was conducted at the same time as the dispositional hearing.  The court found that "after considering the factors contained in [R.C.] 2152.83(D), [A.J.] shall register as a Tier II sexual offender."

{¶ 5}    At the classification hearing, the court further stated that "pursuant to [R.C.] 2152.84, this Court will conduct a hearing at the end of your disposition."  The court continued:  "So at the conclusion or the end of the period of which you were on community control, probation supervision, you are entitled to and I am

required to hold a hearing, it's mandatory, and at that hearing, I will consider factors, and I can either lower your classification, completely declassify you, or leave your classification the way it is."

{¶ 6} In the court's journal entry memorializing this classification hearing, the court classified A.J. as a juvenile-offender registrant and a Tier II sex offender/child-victim offender. It is from this order that A.J. appeals.

## II. Law

### A. Standard of Review — Juvenile-Offender Registrant and Sex-Offender Classification

{¶ 7} The Ohio Supreme Court has held that "[p]ursuant to R.C. 2152.19(A)(4), a juvenile court has broad discretion to craft an appropriate disposition for a child adjudicated delinquent." *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 6. A juvenile court's disposition order will be upheld unless the court's decision is unreasonable, arbitrary, or unconscionable. *In re K.M.C.,* 8th Dist. Cuyahoga No. 103449, 2016-Ohio-5322, ¶ 4.

### B. R.C. 2152.83 Factors — Juvenile-Offender Registrant

{¶ 8} Pursuant to R.C. 2152.83(B)(1), a juvenile court that adjudicates a child delinquent may conduct a hearing "to determine whether the child should be classified a juvenile offender registrant." This hearing may be conducted "at the time of the disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, * * * at the time of the child's release from the secure facility * * *."

## C.  R.C. 2152.831 Factors — Sex-Offender/Child-Victim Offender

{¶ 9}   Pursuant to R.C. 2152.831 (A), if a juvenile court adjudicates a child delinquent and classifies the child a juvenile-offender registrant, "before issuing the order that classifies the child a juvenile offender registrant the court shall conduct a hearing to determine whether to classify the child a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender."  Under R.C. 2152.83(C)(1), the juvenile court may hold the sex-offender classification hearing at the same time as the juvenile-offender registrant hearing.

{¶ 10}  Pursuant to R.C. 2152.83(B)(1), the juvenile court may conduct the classification hearing only if all three of the following factors apply:

(a) The act for which the child is or was adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

(b) The child was fourteen or fifteen years of age at the time of committing the offense.

(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82[1] of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.

{¶ 11}  Pursuant to R.C. 2152.83(D), the juvenile court shall consider the following factors when deciding whether to classify a delinquent child as a juvenile-offender registrant:

---

[1] R.C. 2152.82 governs the mandatory, as opposed to discretionary, classification of juvenile-offender registrants.  The parties do not dispute that R.C. 2152.82 does not apply to A.J.

(1) The nature of the sexually oriented offense or the child-victim oriented offense committed by the child;

(2) Whether the child has shown any genuine remorse or compunction for the offense;

(3) The public interest and safety;

(4) The factors set forth in division (K) of section 2950.11 of the Revised Code, provided that references in the factors as set forth in that division to "the offender" shall be construed for purposes of this division to be references to "the delinquent child;"

(5) The factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code as those factors apply regarding the delinquent child, the offense, and the victim;

(6) The results of any treatment provided to the child and of any follow-up professional assessment of the child.

## III. The Record Regarding A.J.'s Classification

{¶ 12} At the classification hearing, the state argued that A.J. was 15 years old at the time of the offense and, although "this is * * * discretionary, * * * the State would recommend [the court] classify [A.J.] as a Tier II sex offender." Pursuant to R.C. 2950.01(F)(1)(c), a Tier II sex offender includes a person who has been adjudicated delinquent of R.C. 2907.05(A)(4). Furthermore, a child-victim offender includes a person who has been adjudicated delinquent of "any child-victim oriented offense." R.C. 2950.01(D). The parties do not dispute that the classification tier at issue in the instant case is a Tier II classification.

{¶ 13} The state argued that under the R.C. 2152.83(D) factors, the offense at issue is gross sexual imposition in violation of R.C. 2907.04(A)(1) and (4), and the victim was four years old at the time of the offense. According to the state, A.J.'s

"only remorse is that he was baby-sitting Z. He does not believe — does not take any responsibility for this." The state argued that A.J. "is not engaged in any pro-social activities. He watches porn with his gamer friends, and the State believes he has an interesting fantasy with the victim with the tattooing on the arm[2] and saying that that's the only thing that makes him happy."

{¶ 14} The state argued that under R.C. 2950.11(K)(8), "[w]hether the offender's conduct toward the victim was part of a demonstrated pattern of abuse, [Z.], at one point, alleged that this incidence had occurred over the summer at least three times."

{¶ 15} Turning to the R.C. 2929.12(B) factors, the state argued that, under R.C. 2929.12(B)(2), Z. "did suffer psychological harm due to this. She, as [her mother] described, she is in counseling, [Z.] is in counseling as well. [Z.] is having bad separation anxiety. At one point, [Z.] was wetting the bed." The state further argued that, under R.C. 2929.12(B)(6) A.J.'s "relationship with the victim facilitated this offense. [A.J.] is [Z.'s] uncle. She was being baby-sat by [A.J.], someone who she loved and felt she could trust."

{¶ 16} A.J.'s counsel argued the following at the hearing:

Your honor, looking at [R.C.] 2929.12, [A.J.] did not hold a position of trust in the community, public office, an elected official. He did have a relationship with the victim. We'll agree to that. He didn't commit the offense as part of a hire or part of an organized criminal activity, and he wasn't motivated by the victim's race or ethnic background.

---

[2] According to a document titled Comprehensive Juvenile Assessment of Risk & Needs ("CJARN"), A.J. had Z.'s name tattooed on his arm "after the allegations were made."

I would contend that the less serious factors in [R.C.] 2929.12(C) are relevant. He didn't act under strong provocation. And he's not likely to commit — according to the recidivism factor, he's not likely to commit any future crimes.

And then, your Honor, there's not multiple victims, he didn't use drugs or alcohol, looking at the factors under (K) in [R.C.] 2950.11. * * * [A]nd he has no prior criminal or delinquency record with the Court * * *.

## IV. Analysis

### A. Consideration of the Relevant Statutory Factors

{¶ 17} In his first assignment of error, A.J. argues that the court abused its discretion by failing to consider all the relevant factors under R.C. 2152.83 at the dispositional hearing.

#### 1. R.C. 2152.83(B)(1) Factors

{¶ 18} A.J. was adjudicated delinquent of gross sexual imposition in violation of R.C. 2907.04(A)(1) and (4). It is undisputed that gross sexual imposition is a sexually oriented offense, thus satisfying R.C. 2152.83(B)(1)(a). A.J. was born on March 29, 2005. According to the complaint filed against A.J., the date of the alleged offenses is August 15, 2020. This establishes that A.J. was 15 years old "at the time of committing the offense," thus satisfying R.C. 2152.83(B)(1)(b). It is undisputed that R.C. 2152.82 and 2152.86 do not apply to A.J., thus satisfying R.C. 2152.83(B)(1)(c).

#### 2. R.C. 2152.83(D) Factors

##### a. R.C 2152.83(D)(1)-(3) and (6)

{¶ 19} The juvenile complaint against A.J. states that he "touched [Z.'s] vaginal area," which describes that "nature" of the sexually oriented offense under

R.C. 2152.83(D)(1). Additionally, according to the August 16, 2020 police report, Z. complained that A.J. "put his private parts inside her private parts." As to whether A.J. "has shown any genuine remorse" under R.C. 2152.83(D)(2), according to the record, A.J. does not show remorse for his conduct, other than to express remorse that he was babysitting Z. According to the CJARN, A.J. has been in counseling since March 2021, "because [he] was saying he did not want to []³ anymore," which is pertinent to R.C. 2182.83(D)(6).

### b. R.C. 2152.83(D)(4)

{¶ 20} R.C. 2152.82(D)(4) instructs the juvenile court to consider "[t]he factors set forth in division (K) of section 2950.11 * * *." The following reflects upon the R.C. 2950.11(K) factors. As stated earlier in this opinion, A.J. was 15 years old at the time of the offenses. He was 16 years old at the time of the juvenile court proceedings. A.J. has no prior criminal or delinquency record. Z. was four years old at the time of the offenses, and she was the only victim. There is no evidence in the record that A.J. used drugs or alcohol during the offenses. According to the CJARN, A.J. has "Other Specified D[] and Adjustment Disorder." The nature of A.J.'s sexual contact with Z. was genital touching. As to whether there was a "demonstrated pattern of abuse," the state argued at the hearing that Z. "alleged that this incidence has occurred over the summer at least three times."

---

³ The copy of the CJARN in the record prematurely cuts off at the right, top, and bottom of the page, leaving out some words. These omissions are indicated in this opinion with brackets [].

### c. R.C. 2152.83(D)(5)

{¶ 21} R.C. 2152.82(D)(5) instructs the juvenile court to consider "[t]he factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code * * *." The following reflects upon the R.C. 2929.12(B) and (C) factors. At the dispositional portion of the hearing, Z.'s mother spoke on the record about the "mental injury" Z. suffered due to A.J.'s sexual contact. Z. no longer has a relationship with her father, who is A.J.'s brother, Z. is "having a hard time with school," she has "separation anxiety," and she is in therapy. Z.'s tender age of four years old at the time of the offenses exacerbated her mental injuries. A.J. is Z.'s uncle and was her babysitter at the time of the incident, and this relationship facilitated the offenses.

### 3. R.C. 2152.83 Does Not Require Fact Finding

{¶ 22} Upon review, we find no basis to conclude that the trial court failed to consider the relevant statutory factors when classifying A.J. as a juvenile-offender registrant and Tier II sex offender. The court's journal entry expressly finds that the R.C. 2052.83(B)(1) factors apply to the case at hand. At the classification hearing, the court heard from the prosecutor and A.J.'s counsel, who both referenced various R.C. 2152.83 and other associated statutory factors. Furthermore, the court stated on the record that it received "a predispositional report, as well as a sexual offender assessment and report" concerning A.J. *Compare State v. Gaines*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2016-Ohio-4863, ¶ 72 ("While trial courts must carefully consider the statutes that apply to every felony case, it is not necessary for the trial court to articulate its considerations of each individual factor as long as it is

evidence from the record that the principles of sentencing were considered.") *See also In re K.T.*, 8th Dist. Cuyahoga No. 108009, 2019-Ohio-4258, ¶ 25, quoting *In re C.R.*, 4th Dist. Ross No. 13CA3411, 2014-Ohio-1936, ¶ 6 ("we note that although the classification statute requires the juvenile court to consider the outline factors, nothing in the statute requires the juvenile court to 'explicitly announce its findings regarding each individual factor before it classifies a child as a juvenile offender registrant'").

{¶ 23} Accordingly, A.J.'s first assignment of error is overruled.

## B. Reclassification as a Juvenile Offender

{¶ 24} In his second assignment of error, A.J. argues that the juvenile court "lacks authority under [R.C.] 2152.83(B) to reclassify [him] as a Tier II juvenile offender a second time after his release from the Village Network facility."

{¶ 25} Pursuant to R.C. 2152.84(A)(1), when a juvenile court classifies a delinquent as a "juvenile offender registrant" and a "sex offender/child-victim offender," upon completion of the delinquent's disposition, the court

> shall conduct a hearing to review the effectiveness of the disposition and of any treatment provided for the child, to determine the risks that the child might re-offend, to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated * * * and to determine whether its prior determination * * * as to whether the child is a * * * sex offender/child-victim should be continued or modified * * *.

{¶ 26} The Ohio Supreme Court has interpreted R.C. 2152.84(A) to stand for the following: "Thus, every child classified after an R.C. 2152.83(B)(2) hearing — whether the court decides to classify the juvenile at disposition or after release from

a secure facility — will receive at the completion of his or her disposition a hearing regarding whether the classification continues to be appropriate." *In re I.A.,* 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, ¶ 17.

{¶ 27} A.J.'s assignment of error states that the court "lacks authority under [R.C.] 2152.83(B) to reclassify" A.J. Although A.J. is technically correct, he does not take into consideration that the court's authority to reclassify stems from another statute — R.C. 2152.84(A)(1). Accordingly, A.J.'s second assignment of error is overruled.

## C. Community Notification as a Sex Offender

{¶ 28} In his third and final assignment of error, A.J. argues that the juvenile court erred by imposing "community notification" on him as part of his Tier II sex-offender classification. The state, on the other hand, argues that the court did not, and could not, impose a community-notification requirement on A.J. as a Tier II sex offender.

{¶ 29} Upon review of the record, including the transcript and court's journal entries, we find that the court did not impose "community notification" requirements on A.J. Therefore, A.J.'s third assignment of error is overruled.

{¶ 30} Accordingly, we find the court acted within its discretion when it classified A.J. as a juvenile-offender registrant and a Tier II sex offender.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR